

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| DIANE THOMAS, Individually and as Duly Qualified Tutrix of LD, a minor | CIVIL ACTION NO. 04-0531-A |
|---|---|
| -vs- | JUDGE DRELL |
| GUS GREEN, CITY OF MARKSVILLE, THROUGH ITS POLICE AND FIRE DEPARTMENTS, HERBERT GUILLOT, JOHN AUGUSTINE, BOBBY COON, JO-JO BORDELON, AND SHEILA JOHNSON, Individually and in Their Official Capacities as Police Officers of the City of Marksville, and William O. Belt, Sheriff of Avoyelles Parish | MAGISTRATE JUDGE KIRK |

## R U L I N G

Before the Court is a Motion for Summary Judgment (along with a request that dismissal be at Plaintiffs' cost) filed by certain Defendants, City of Marksville through its Fire Department,[1] Mark Bordelon, Neal Dauzat[2], and Chris P. Bordelon, individually and in their capacities as employees of the City of Marksville Fire

---

[1] Plaintiffs sue the City of Marksville through its Police and Fire Departments. Because the pending Motion for Summary Judgment only requests that we dismiss claims pending against the City of Marksville as it acted through its Fire Department, we make no determination as to the City's liability, if any, arising from the actions of its Police Department.

[2] Plaintiffs sue Neal Dauzat in his capacity as an employee of both the City of Marksville Fire Department and the Avoyelles Parish Sheriff's Office. (Doc. 53). Because the pending Motion for Summary Judgment only requests the dismissal of claims pending against Mr. Dauzat as an employee of the City of Marksville Fire Department, we make no determination here as to whether any liability arises from his duties as an employee of the Avoyelles Parish Sheriff's Office.

Department (hereinafter, collectively, "Fire Department Defendants") and American Alternative Insurance Corporation (hereinafter "AAIC"), the insurer for the Fire Department Defendants. (Doc. 72). Plaintiffs Lakeisha Day and Diane Thomas, Individually and as duly qualified Tutrix of the minor Lakeisha Day (hereinafter "Plaintiffs" or "Day" and "Thomas," respectively),[3] oppose the motion. (Doc. 74). Discovery is complete in this case and the motion is ripe for adjudication. After reviewing the pleadings and the applicable law, the Motion for Summary judgment will be GRANTED.

**Background**

Plaintiffs seek damages arising from the alleged rape of Ms. Day by Gus Green (hereinafter "Green"), a convict housed by the Avoyelles Sheriff but on work release to the City of Marksville Fire Department. (Doc. 86). On July 4, 2003, Mr. Green was left alone at the Marksville Fire Department while on work detail. (Doc. 86). The alleged incident occurred when Mondoria Reed (hereinafter "Reed"), Ms. Thomas's friend and Mr. Green's former cell mate, brought Ms. Day to the fire station and left her there "upon the word of Green that she wanted to

---

[3] Lakeisha Day reached the age of majority after suit was filed by Diane Thomas on her behalf. The pleadings have been amended to reflect that Ms. Day is now pursuing her claims individually as a second plaintiff in this case. (Doc. 43). Therefore, although several pleadings were filed while Lakeisha Day was not a party to the suit, since she is now a plaintiff, we write as though there has always been more than one plaintiff in this suit, thus using the plural "Plaintiffs" to refer to all actions and allegations by the accusing side since the suit's inception.

be left." (Doc. 86). After Mr. Reed left, Mr. Green allegedly raped Ms. Day on the fire station premises.

Plaintiffs sued several parties, including Mr. Green, certain employees of the Avoyelles Parish Sheriff's Office and the Avoyelles Parish Sheriff. Plaintiffs later amended their pleadings, adding the Fire Department Defendants and AAIC. (Doc. 53). Plaintiffs' claims against these various defendants include causes of action for denial of Ms. Thomas' and/or Ms. Day's rights under 42 U.S.C. §§ 1983, 1985(2), 1985(3), and 1986 and "denial of the equal protection of the laws . . . mandated by the Fifth and Fourteenth Amendments" to the United States Constitution and the Louisiana Constitution. (Doc. 1). They also invoke our supplemental jurisdiction to address various alleged violations of Louisiana law and "other causes of action that arise out of the same set of facts." (Doc. 1). The claims against the Fire Department Defendants are alleged to be a result of negligent conduct, statutory violations of La. Rev. Stat. § 15:708, and breach of contractual responsibilities arising from participation in a work release program.

**Law and Analysis:**

Rule 56(c) of the Federal Rules of Civil Procedure mandates that a summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file . . . together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered

on the issue of liability alone although there is a genuine issue as to the amount of damages.

A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the Court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 321-313, 106 S.Ct. 2548 (1986)). In the analysis, all inferences are drawn in the light most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1959). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. Brock v. Chevron U.S.A., Inc., 976 F.2d 969, 970 (5th Cir. 1992).

The Fire Department Defendants give a litany of reasons explaining why they bear no responsibility for the alleged rape. In the alternative, they maintain they are entitled to immunity. Here, we find no reason to explore those explanations. Instead, the nature of the Plaintiffs' allegations resolves the motion for us. The entirety of Plaintiffs' claims against the Fire Department Defendants centers on their allegation that these Defendants acted in violation of La. Rev. Stat. § 15:708 and were grossly negligent. (Doc. 74).

4

We are unclear how the Fire Department Defendants could have violated La. Rev. Stat. § 15:708. Of the statute's sections addressing who bears responsibility for inmates on work detail, all assign supervisory responsibility to the Sheriff's Office. Sections 15:708(A)(1)(a), (A)(2), (A)(3)(a) and (A)(5)(a) specifically provide that prisoners who work outside of a parish prison "shall always remain under the custody and control of the sheriffs." Because the Fire Department Defendants are not employees of any sheriff's office (remembering that we are only addressing claims against Neal Dauzat in his capacity as an employee of the fire department), these subsections clearly bestow responsibility for the prisoner on an entity *other than* the Fire Department and its employees.

In their opposition to Defendants' Motion for Summary Judgment, Plaintiffs maintain § 15:708(E) vitiates any claims the Fire Department might make that they are entitled to statutory immunity. Section 15:708(E) states, in its entirety:

> The political subdivision which administers the solid waste recycling program or any other public work or nonprofit program shall indemnify and hold the sheriff, the state, and the state agency harmless for any injury caused by the inmate, unless the gross negligence or intentional act of the sheriff or the state or the state agency was a substantial factor in causing the injury.

While subsection (E) may require a public work, here the Fire Department, to indemnify the sheriff in some instances, the provision (discussed more fully later in this Ruling) only applies *if* the sheriff is held liable and *if* the sheriff was not grossly negligent. While the provision indicates the Fire Department itself might have liability under some circumstances, the provision in no way provides a cause

5

of action for Ms. Thomas and Ms. Day to recover from the Fire Department Defendants. It is a provision whereby the sheriff might recover from a public work such as the Fire Department. Therefore, Defendants' Motion for Summary Judgment as to claims made by Plaintiffs pursuant to § 15:708 will be granted.

Claims that a defendant acted in a grossly negligent fashion are analyzed according to the duty-risk analysis applicable to ordinary negligence claims. Rathey v. Priority EMS, Inc., 04-0199 (La. App. 4 Cir. 1/12/05); 894 So. 2d 438, 459-60. Determination of liability under the duty-risk analysis requires proof of five elements: (1) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (2) the appropriate standard (the breach element); (3) the defendant had a duty to conform his conduct to a specific standard (the duty element); (4) the defendant's substandard conduct was the legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element). Perkins v. Entergy Corp., 00-1372, p.7 (La. 3/23/01); 782 So. 2d 606.

Without considering the appropriate standard applied to gross negligence, we are perplexed about how Plaintiffs might possibly assert the Fire Department Defendants owed Plaintiffs a duty to keep Mr. Green from allegedly raping Ms. Day. As cited above, § 15:708 gives the Sheriff's Office the responsibility to supervise inmates on work release. The Avoyelles Parish Sheriff's Office acknowledged this responsibility with an internal policy stating: "[c]ommissioned

officers are responsible for the care custody and control [sic] of the inmates assigned to them . . . Supervising officers will not leave their inmates unsupervised at anytime." (Doc. 72, Exh. B). Additionally, the parties have not provided us with any evidence of a written agreement between the Sheriff's Office and the Fire Department Defendants wherein the latter agreed to assume supervisory responsibility for Mr. Green.

Despite Plaintiffs' allegations of gross negligence, the following deposition excerpts and affidavits show the Fire Department Defendants never agreed to take responsibility for Mr. Green nor knew he had previously been convicted of a sex offense.

Mr. Mark Bordelon testified as follows (Doc. 72, Exh. C, p. 6-9):

Q: Was [sic] there any special rules that the Fire Department had with regard to the supervision of Gus Green?
A: No, sir, we never received any rules from neither [sic] the Sheriff's Office nor the City of Marksville concerning the security of this inmate. The Sheriff's Office–to my knowledge, the Sheriff's Office was made aware that if we had a call, a fire we had to go to respond to, we had to go.
Q: Did you ever implement as fire chief any particular plan for supervising an inmate that was on a work program from the jail?
A: No, sir. I mean he's–in my eyes he's the property of the State and the Sheriff's Office and if they had rules that we needed to know about, it was up to them to make the rules to tell us what he can and can not do.
Q: Where you ever instructed on such rules?
A: No, sir.

Messrs. Chris Bordelon, Mark Bordelon, and Neal Dauzat testified via affidavit: "Gus Green was allowed to remain in the fire station, alone, upon emergency calls; [t]he Sheriff was made aware of this practice." (Doc. 72, Exh. D, E, and F).

The former fire chief, Mr. Ned Bordelon, testified as follows (Doc. 74, Exh. A, p. 7-9, 16):

> Q: Did you have any discussions with anyone from the Sheriff's Office about your responsibility for the inmate while he was away from the jail?
> A: No sir.
> Q: If he [Gus Green] testified that he had a prior record for having committed sex offenses, did you ever know that?
> A: No, I never knew that he was in there for some kind of sex offender [sic] . . . He was a good guy to us at the fire station. We never had no [sic] problem . . . [h]e said he was in there for money laundering."
> Q: Where there any memos or directives ever given to you from the Sheriff's Office concerning your supervision of the inmate that was working at the fire station?
> A: No, sir.
> Q: Were there any kind of papers signed between the Fire Department and the Sheriff's Office with regard to the loan of this inmate to do work at the Fire Department?
> A: Not that I'm aware of, no sir.
> Q: Were there any agreements made between you and the Sheriff's Department that said you would be in charge of him while he was away from the Sheriff's Office and you will supervise him and be sure that he has no contact with the public?
> A: Well, when I first got him, I knew my responsibilities to keep an eye on him and that's about it, keep an eye on him and make sure that he didn't take a truck and go riding somewhere.

Similarly, Mr. Neil Dauzat testified (Doc. 74, Exh. H. p. 10-11):

> Q: Do you–in the fire department are there any written rules, memos, any kid of a letter posed on the wall or given to you at any time on how you were supposed to handle or supervise inmates who work at the fire department?
> A: No, sir, not that I could recall.
> Q: Any meetings that you had where you discussed inmate labor and how employees were to supervise or handle or instruct inmates who worked at the fire department?
> A: No, sir, not that I could recall.
> Q: Did you ever have any conversations with anyone at the sheriff's department on how inmates should be handled?
> A: No, sir.
> Q: And are you aware of any memos that would have come from the sheriff's department on how they were to be handled?
> A: No, sir, I'm not aware of any.

After reviewing the above referenced testimony, we see no genuine issue of material fact as to the following: (1) the Fire Department employees were not told to supervise any inmates or how to supervise inmates; (2) there was no written agreement between the Sheriff's Office and the Fire Department wherein the Fire Department or its employees agreed to supervise any inmates; (3) the Sheriff's Office knew Mr. Green was left alone at the fire station when the firemen attended to their firefighting duties; and (4) the Fire Department Defendants were unaware that Mr. Green's criminal record included prior sexual offenses. It is also significant that the most unfortunate events with respect to Ms. Day allegedly occurred while the Fire Department was away from the fire house and attending to official duties. No one in the fire department could, in our view, have foreseen that Mr. Green's former cellmate would *voluntarily* deliver a minor, Ms. Day, to the

station, leave her there unsupervised, and hide the entire matter from her mother. Finally, even if we were to consider a look at this situation from the perspective of a possible "borrowed servant", which no party has suggested we do, it is obvious that Mr. Green must be considered to have been light years away from the course and scope of his "employment" with the fire department.

These facts are sufficient to meet Fire Department Defendants' burden to show that there is no genuine issue of material fact as to whether they were at fault or acted in a simply or grossly negligent fashion when they left Mr. Green at the fire station to attend to their firefighting duties. Likewise, since Plaintiffs failed to meet their burden to show that there is such an issue, the Fire Department Defendants are entitled to judgment as a matter of law.

In this analysis we are aware of Hite v. Larpenter, 04-1821 (La. App. 1 Cir. 9/23/05), 923 So. 2d 140, which only decides the matter of potential limitations of the Sheriff's liability and not the liability of the public agency providing work to the inmate on work release. Likewise, we note the rather strange language in La. Rev. Stat. § 15:708 (E), which requires indemnification of the Sheriff by the political subdivision utilizing an inmate. The statute provides plainly that there is no indemnity owed unless the Sheriff is grossly negligent or guilty of an intentional tort. Yet, under the guidance of Hite, the Sheriff would not be liable anyway, absent one of those two conditions existing. In short, although the statute purports to provide indemnity, no such indemnity can exist in the absence

of the Sheriff's liability at law based on the lesser standard of simple negligence or other fault. This is strange indeed for a statutory scheme, but even applying the statute here, we see that the Fire Department Defendants cannot remain parties to this case even if the basis were for indemnity under § 15:708 (E).

Therefore, the Fire Department Defendants' Motion for Summary Judgment will be GRANTED, Plaintiff's claims against them will be dismissed with prejudice and said Defendants will be dismissed as parties from this suit.

SIGNED on this 26th day of May, 2006, at Alexandria, Louisiana.

Dee D. Drell
United States District Judge