UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION
_____

| | |
|---|---|
| **DIANE THOMAS, ET AL.** | **CIVIL ACTION NO. 04-0531-A** |
| **-vs-** | **JUDGE DRELL** |
| **GUS GREEN, ET AL.** | **MAGISTRATE JUDGE KIRK** |

# R U L I N G

Before the Court is a Motion for Summary Judgment filed on September 18, 2006, by the City of Marksville through its Police Department, Herbert Guillot, John Augustine, Lawrence (JoJo) Bordelon, and Shelia Johnson. (Doc. # 98). Plaintiffs, Lakeisha Day, and Diane Day Thomas oppose the motion. (Doc. # 100). Discovery is complete in this case and the motion is ripe for adjudication. After reviewing the pleadings and the applicable law, the Motion for Summary judgment will be GRANTED.

**SUMMARY JUDGMENT STANDARD**

Rule 56(c) of the Federal Rules of Civil Procedure mandates that a summary judgment:

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file . . . together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 249-50, 106 S. Ct. 2505, 2511 (1986). If the movant produces evidence tending to show there is no genuine issue of material fact, the nonmovant must then direct the Court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 321-23, 106 S. Ct. 2548, 2551-53 (1986)). In the analysis, all inferences are drawn in the light most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. Brock v. Chevron U.S.A., Inc., 976 F.2d 969, 970 (5th Cir. 1992).

## BACKGROUND

Plaintiffs seek damages arising from the alleged rape of Lakeisha Day by Gus Green, a convict housed by the Avoyelles Parish Sheriff but on work release to the City of Marksville Fire Department. (Doc. # 86). On July 4, 2003, Mr. Green was left alone at the Marksville Fire Department while on work detail. (Doc. #86). The alleged incident occurred when Mondoria Reed, Ms. Day's stepfather, drove Ms. Day and her cousin to the fire station to visit Mr. Green. According to

Ms. Day, shortly after their arrival, Mr. Green escorted her to the bathroom, followed her inside, and raped her.  (Doc. # 98, exhibit C).

Three days later, on July 7, 2003, Detective Herbert Guillot of the Marksville City Police Department applied to local District Court Judge Mark Jeansonne for an arrest warrant for the victim's mother, Diane Thomas, complaining that Ms. Thomas had violated the provisions of La. R.S. 14:92.2(A)(1)(b), titled "Improper Supervision of a Minor by a Parent or Legal Guardian."[1]  (Doc. # 98).  Based on the information contained in Guillot's affidavit, Judge Jeansonne issued an arrest warrant for Ms. Thomas charging her with improper supervision of a minor by a parent.  (Doc. # 100, exhibit H).  On that same date, warrants were issued for the arrest of Mondoria Reed for criminal conspiracy and contributing to the delinquency of a juvenile, and against Gus Green for forcible rape and oral sex battery.  (Doc. # 98, exhibits F & G).

The next day, Assistant Chief John Augustine, assisted by Detectives Hebert Guillot, Shelia Johnson, and Lawrence (JoJo) Bordelon, executed the arrest warrants for Ms. Thomas and Mr. Reed at the law offices of Attorney John Bennett.  Following their arrests, Thomas and Reed were transported to the

---

[1] Section (b) of that statute declares it unlawful, for a parent or legal custodian, who has care and control of a minor, to permit, through criminal negligence, the minor to associate with a person known by the parent or custodian to have been convicted of a felony offense. La. Rev. Stat. Ann. 14:92.2(A)(1)(b) (West 2007).  "Criminal negligence exists when, although neither specific nor general intent is present there is such disregard of the interest of others that the offenders conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances."  La. Rev. Stat. Ann. 14:12 (West 2007).

Avoyelles Parish Sheriff's Office, where, approximately three hours later, Ms. Thomas was released after posting bond. All charges brought against Ms. Thomas relating to the alleged rape of her daughter have since been dismissed. (Doc. # 86).

On March 1, 2004, Ms. Thomas, individually and on behalf of her daughter,[2] sued several parties, including Mr. Green, the City of Marksville through its Police Department, Herbert Guillot, John Augustine, Lawrence (JoJo) Bordelon, and Shelia Johnson (sometimes referred to collectively as "Police Department Defendants").[3] (Doc. # 1). The claims currently before us–that is, those against the Police Department Defendants–emanate from the subsequent investigation and arrest of Ms. Thomas on the charge of "Improper Supervision of a Minor by a Parent or Legal Custodian," and include causes of action under 42 U.S.C. § 1983, 1985(2), 1985(3), and 1986. (Doc. # 100). Plaintiffs also invoke our supplemental jurisdiction to address various alleged violations of Louisiana law and "other causes of action that arise out of the same set of facts." (Doc. # 1).

---

[2] Lakeisha Day reached the age of majority after suit was filed by Diane Thomas on her behalf. The pleadings have been amended to reflect that Ms. Day is now pursuing her claims individually as a second plaintiff in this case. (Doc. 43). Therefore, although several pleadings were filed while Lakeisha Day was not a party to the suit, since she is now a plaintiff, we write as though there has always been more than one plaintiff in this suit, thus using the plural "Plaintiffs" to refer to all actions and allegations by the accusing side since the suit's inception.

[3] The City of Marksville, through its Fire Department, has been dismissed previously from the case. (Doc. # 92).

## LAW AND ANALYSIS

At the outset, we note that Plaintiffs have failed to sustain their initial burden of proof with regard to the conspiracy claims alleged under 42 U.S.C. § 1985(2), 1985(3), and 1986. See Eason, 73 F.3d at 1325 (5th Cir. 1996). More specifically, the record is devoid of summary judgment evidence which would tend to show that the Police Department Defendants conspired to interfere with Plaintiffs' civil rights. Instead, Plaintiffs rely on mere conclusory assertions in support of these claims. Accordingly, Plaintiffs' federal claims alleged under 42 U.S.C. § 1985(2), 1985(3), and 1986 will be dismissed with prejudice.

Now we address Plaintiffs' remaining claims, also attacked by a summary judgment motion.

**42 U.S.C.§ 1983**

42 U.S.C. § 1983 allows a claimant to seek redress against any person who, under color of state law, deprives him (or her) of a constitutionally guaranteed right. Claims brought under this statute are analyzed according to whether the defendant is an individual or a governmental entity. See Monell v. Dep't of Social Servs., 436 U.S. 658, 691-92, 98 S.Ct. 2018, 2036 (1978). Here, Plaintiffs sued the Police Department Defendants both individually and in their official capacities.

**Official Capacity Claims**

Ms. Thomas alleges that the Police Department Defendants, in their official capacities, violated her constitutional rights under the Fourth Amendment by her

5

false arrest.[4] (Doc. # 100). A suit against local government officials in their official capacities is in essence a suit against the governmental entity itself. See Woodrus v. Andrus, 419 F.3d 348, 352 (5th Cir. 2005). A governmental entity cannot be held vicariously liable for the constitutional torts of its employees or agents, "unless there is a showing of a policy or practice approved by the entity." Daniel v. Compass, 2006 WL 3627141*2 (5th Cir. Dec. 13, 2006); see also Monell, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983"). To establish liability for a constitutional violation against the Police Department Defendants in their official capacities, Plaintiffs therefore must demonstrate that the alleged constitutional offense is the policy or custom of the City of Marksville Police Department.[5] See Woodrus, 419 F.3d at 352.

A careful review of the record shows that Plaintiffs do not specifically identify an ordinance, regulation, policy, or a well-settled custom or policy of the

---

[4] Although Plaintiffs do not explicitly allege a constitutional violation under the Fourth Amendment, we construe their complaint as such.

[5] While official policy is contained typically in duly promulgated policy statements, ordinances or regulations, a policy may be evidenced by a custom, that is "a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." See Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984). Actions of officers or employees of a local government entity do not render the municipality liable under section 1983 unless they execute official policy as above defined. See Id.

City of Marksville Police Department in obtaining arrest warrants violative of the Fourth Amendment. Without such a showing, Plaintiffs can prove no set of facts to support their § 1983 claims against the Police Department Defendants in their official capacities. As such, these claims will be dismissed with prejudice.

**Individual Capacity Claims**

Plaintiffs allege that Herbert Guillot, John Augustine, Lawrence (JoJo) Bordelon, and Shelia Johnson, obtained an arrest warrant for Ms. Thomas without a showing of probable cause in violation of the Fourth Amendment. (Doc. # 100). In response, these defendants argue that they are entitled to qualified immunity.

"The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of the then clearly established law." Thompson v. Upshur County, 245 F.3d 447, 456 (5th Cir. 2001). A two-part test is used in determining whether a § 1983 defendant is entitled to qualified immunity: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and, (2) if so, whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident. See Hare v. City of Corinth, 135 F.3d 320, 325 (5th Cir. 1988). "In terms of the law being clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Goodson v. City of Corpus Christi, 202 F.3d

730, 736 (5th Cir. 2000). As for the second prong of the test, "the touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." Id. "Therefore, even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity." Id. It is the plaintiff's burden to prove that a governmental official is not entitled to qualified immunity. See Michalik v. Hermann, 422 F.3d 252, 258 (5th Cir. 2005).

Here, although a violation of a clearly established right has been alleged,–namely, that Detective Guillot's warrant application so lacked probable cause as to render official belief in its existence unreasonable–Plaintiffs have failed to show why potential liability for this purported constitutional violation should extend beyond Detective Guillot. Simply put, there is no record evidence which would tend to show that John Augustine, Lawrence (JoJo) Bordelon, or Shelia Johnson assisted Guillot in obtaining the arrest warrant for Ms. Thomas. Rather, the record reveals that these three defendants merely participated in effecting Thomas' arrest.[6] Consequently, we find that John Augustine, Lawrence (JoJo) Bordelon, and Shelia Johnson are entitled to qualified immunity.

We now address whether Detective Guillot is deserving of the same.

---

[6] With regard to the manner in which these defendants effected Thomas' arrest, Plaintiffs' allegations do not rise to the level of a constitutional violation.

In the case of a police officer applying for an arrest warrant, the shield of immunity is lost "[o]nly where the warrant application is so lacking in indicia of probable cause[7] as to render official belief in its existence unreasonable." Malley v. Briggs, 475 U.S. 335, 345, 106 S. Ct. 1092, 1098 (1986). To prevail in the action before us, Plaintiffs therefore "must demonstrate that a genuine issue of material fact exists as to whether [Detective Guillot] provided false information to secure the arrest warrant [changed from plural to singular] or gave false information in reckless disregard for the truth." Freeman v. County of Bexar, 210 F.3d 550, 553 (5th Cir. 2000). Put differently, Guillot is not entitled to immunity if, "on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue." Malley, 475 U.S. at 341. If, however, "officers of reasonable competence could disagree on this issue, immunity should be recognized." Id.

Here, Plaintiffs do not question the veracity of the statements within Detective Guillot's affidavit, but rather, claim that it so lacked probable cause "as to render belief in the existence of the charge unreasonable." (Doc. # 100). We disagree.

---

[7] Probable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" Gerstein v. Pugh, 420 U.S. 103, 111, 95 S. Ct. 854, 862 (1975) (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S. Ct. 223, 225 (1964)).

On July 5, 2003, Ms. Thomas provided a written statement to the Marksville City Police Department in which, with regard to her knowledge of the events leading up to the alleged rape, she related the following:

> Gus [Mr. Green] start calling the house on Tuesday when he got the number from my boyfriend he call us and talk and said he want to see me and the kids, me myself went to see him earlier to day and Lakeisha decided to see him this evening. And when she came back home crying I ask her what was wrong she refused to tell me then later did.

(Doc. # 98, exhibit A).

Later that day, Ms Thomas gave a taped statement to Detective Guillot where she detailed the events that transpired immediately following her daughter's return home, as follows:

> [W]hen she [Ms. Day] got out of the van tonight uh she jumped out the van and she ran in the house crying. And I asked what's wrong and she uh said mom just leave me alone, leave me alone. I said Keisha what happened and she said nothing mom leave me alone. I said so I'm going to find out what happened so I jumped in my van and I came to the Fire Station and I asked Gus. When I got out the van he [Mr. Green] said what's wrong. I said what did you do to my baby?

(Doc. # 98, exhibit B).[8]

On July 7, 2003, armed with the above information in his investigative file, Detective Guillot executed an affidavit before local District Judge Mark Jeansonne

---

[8] At most, a prudent person could have reasonably inferred from these two statements that Ms. Thomas: (1) knew Mr. Green was on work detail at the Marksville Fire Station on July 4, 2003; (2) was aware that her daughter visited the fire station on that date; and (3) had reason to suspect that Mr. Green was responsible for causing the emotional distress her daughter was suffering at that time.

complaining that Diane Thomas had violated the provisions of La. R.S. 14:92.2(A)(1)(b). (Doc. # 100). In his affidavit, Guillot stated, in part: "That she having the care and control of the minor, Lakeisha Day, did *permit* the minor to associate with a person known by the parent to have been convicted of a felony offense."[9] (emphasis added) (Doc. # 100, exhibit H).

Based on the record evidence and considering the totality of the circumstances, we find that Detective Guillot, at the time he swore his affidavit, was not reasonable in believing that probable cause existed sufficient to charge Ms. Thomas in violation of La. R.S. 14:92.2(A)(1)(b). Stated differently, a reasonably competent officer possessing the information that Detective Guillot had at the time he swore his affidavit, could not have concluded that Ms. Thomas did *permit*, *through criminal negligence*, Ms. Day to associate with a person known by the parent or custodian to have been convicted of a felony offense. See La. Rev. Stat. Ann. 14:92.2(A)(1)(b) (West 2007); see also Freeman, 210 F.3d at 553.

In summary, Plaintiffs' federal claims against the Police Department Defendants, except for those against Detective Guillot,[10] and the City of Marksville as employer of Guillot, will be dismissed with prejudice.

---

[9] It is not disputed between the parties that Ms. Thomas knew that Mr. Green had been convicted of a felony offense.

[10] The state law claims against Detective Guillot will likewise survive.

11

Following dismissal of these federal claims, this Court has discretion to continue to exercise jurisdiction over any pending state law claims. See Priester v. Lowndes County, 354 F.3d 414, 425 (5th Cir. 2004) ("A district court may decline to exercise jurisdiction if it has dismissed all the claims over which it had original jurisdiction."); see also 28 U.S.C. § 1367(c)(3). Under the circumstances of this case, particularly the nature of the underlying state law claims, this Court declines to exercise such jurisdiction with regard to the state law claims asserted against John Augustine, Lawrence (JoJo) Bordelon, and Shelia Johnson. Accordingly, Plaintiffs' state law claims against these defendants will be dismissed without prejudice.

## **CONCLUSION**

For the abovementioned reasons, with regard to all claims against John Augustine, Lawrence (JoJo) Bordelon, and Shelia Johnson, summary judgment will be GRANTED. As to both the federal and state law claims asserted against Detective Guillot, however, summary judgment will be DENIED.

SIGNED on this 18th day of May, 2007, at Alexandria, Louisiana.

Dee D. Drell
United States District Judge